UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO RESIDENCE CLUB, INC., *et al.*, | No. C-13-0844 EMC |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND GRANTING DEFENDANTS' ALTERNATIVE MOTION TO TRANSFER VENUE** |
| v. | |
| LEADER BULSO & NOLAN, PLC, *et al.*, | |
| Defendant(s). | **(Docket No. 3)** |

      Plaintiffs in this case are San Francisco Residence Club, Inc. ("SFRC"); Thomas O'Shea and Anne Donahue O'Shea as trustees of the Trust of Thomas and Anne O'Shea; Kate Larkin Donahue; Thomas O'Shea; TAK Tech Point LLC; KKA CAS, LLC; and Grandview Credit, LLC. All of the plaintiffs, except for Grandview, are associated with the O'Shea/Donahue families. *See* O'Shea Decl. ¶ 3. The principal of the remaining plaintiff, Grandview, is a family friend of the O'Shea/Donahue families. *See* O'Shea Decl. ¶ 3.

      Plaintiffs have sued Defendants Leader Bulso & Nolan, PLC and a partner at that law firm, Eugene N. Bulso, raising, *e.g.*, state law claims for breach of fiduciary duty and legal malpractice/negligence. Defendants represented Plaintiffs in various lawsuits across the country, including two lawsuits in Alabama (both in federal court), two lawsuits in California (one in federal court and one in state court), and one lawsuit in Hawaii (in federal court). The bulk of the specific wrongdoing identified by Plaintiffs in their complaint concerns Defendants' conduct in the Alabama

cases. However, Plaintiffs do allege that Defendants overcharged for their services in all of the cases in which Defendants represented them. *See* FAC ¶ 15.

Currently pending before the Court is Defendants' motion to dismiss the case for lack of jurisdiction and improper venue. In the alternative, Defendants move the Court to transfer venue to the Northern District of Alabama. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss and further **GRANTS** Defendants' alternative request for relief.

## I. FACTUAL & PROCEDURAL BACKGROUND

Based on Plaintiffs' complaint and the papers submitted by both parties in conjunction with the pending motion, the relevant factual and procedural background is as follows.

Plaintiffs and Defendants' relationship began in January 2009. *See* FAC ¶ 11; Bulso Decl. ¶¶ 3-4. Initially, Defendants were hired to provide representation in the two federal cases in Alabama:

- *San Francisco Residence Club, Inc. v. Park Tower, LLC*, No. 5:08-cv-01423-AKK (N.D. Ala.); and
- *San Francisco Residence Club v. Baswell-Guthrie*, No. 5:09-cv-00421-CLS (N.D. Ala.).

*See* FAC ¶ 11; Bulso Decl. ¶ 3; A. O'Shea Decl. ¶¶ 7-8.

Eventually, Defendants were hired to provide representation in three additional cases:

- *Kennedy Funding, Inc. v. White Sands Estates, LLC*, No. 1:09-cv-00191-JMS-BMK (D. Haw.);
- *San Francisco Residence Club v. Amado*, No. 3:09-cv-02054-RS (N.D. Cal.); and
- an unidentified California state court action (in Contra Costa Superior Court).

*See* FAC ¶ 11; Bulso Decl. ¶ 5; A. O'Shea Decl. ¶¶ 9-10, 13.

Not all Plaintiffs were involved in each of the above cases. For example, in the *Park Tower* (Alabama) case, Grandview was not a plaintiff. In the *Baswell-Guthrie* (Alabama) case, TAK and KKA were not plaintiffs.

Plaintiffs initiated the instant lawsuit against Defendants after becoming dissatisfied with their representation. As pled in the complaint, the bulk of the alleged wrongdoing committed by

Defendants occurred in conjunction with the two Alabama cases, *Park Tower* and *Baswell-Guthrie*. For example, Plaintiffs assert that Defendants:

- Failed to "designate a suitable expert witness" in *Baswell-Guthrie*, which led the Alabama district court "to award judgment to major defendants in that action, on the grounds that Plaintiffs had not designated a suitable expert witness." FAC ¶ 16; *see also* Opp'n at 8 (asserting that claims against Wilmer & Lee "were dismissed with prejudice because Defendants failed to designate a qualified expert witness to prove the standard of care").
- Failed to "properly and adequately state causes of action" on Grandview's behalf in *Park Tower*; to join Grandview in causes of action being pursued by the other plaintiffs in *Park Tower*; and to include certain causes of action on behalf of all the plaintiffs in *Park Tower*. *See* FAC ¶ 17.
- Failed to "properly and adequately include significant damages" in *Park Tower* such that the Alabama district court excluded those damages as sanctions. *See* FAC ¶ 18.
- Failed to properly advise the plaintiffs in *Park Tower* about the impact of the Alabama district court's order restricting damages, which led the plaintiffs "to expend further large sums of money on the litigation and to be further billed substantially by Defendants." FAC ¶ 19.

Other wrongdoing identified by Plaintiffs in their complaint is not expressly tied to the Alabama cases, but, based on what the parties have recounted in their briefs, that appears to be the case. For example:

- In their complaint, Plaintiffs allege that Defendants took money belonging to Plaintiffs and put it in Defendants' own account, contrary to instructions given by Plaintiffs. *See* FAC ¶ 13. Based on what the parties have submitted in their papers, this alleged wrongdoing appears to relate to a settlement that Plaintiffs obtained from Coldwell Banker in the *Park Tower* and *Baswell-Guthrie* cases. *See* Shiffman Decl. ¶ 2. The settlement with Coldwell Banker was reached in May 2011. *See* Shiffman Decl. ¶ 3. According to Plaintiffs, they instructed Coldwell Banker that the settlement money should be paid to SFRC. *See* Shiffman Decl., Ex. A (e-mail); A. O'Shea Decl. ¶ 15. Defendants, however, had the money

3

wired to their own trust account. *See* A. O'Shea Decl. ¶ 15. "Faced with this fait accompli, Plaintiffs [then] instructed that the money should be retained in the . . . trust account while the dispute was resolved." A. O'Shea Decl. ¶ 15; *see also* Shiffman Decl., Ex. B (e-mail). Defendants, however, "ignored that instruction and unilaterally withdrew money from their trust account and applied it against moneys they claim was owed by Plaintiffs in various matters[,] including the Hawaii Case, the California [Federal] Case and the California State Case." A. O'Shea Decl. ¶ 15. (Defendants appear to take the position that they were authorized to this by mutual agreement of the parties. *See* Bulso Decl. ¶¶ 5-6 (asserting that, under a revised engagement letter dated August 5, 2009, the parties agreed that "the proceeds of any settlements or judgments in the [various] lawsuits will be applied to any outstanding and unpaid legal expenses").)

- In their complaint, Plaintiffs allege that "Defendants have wrongfully asserted liens against Plaintiffs' recoveries in actions." FAC ¶ 20. It appears that the only liens that have been asserted by Defendants are in the two Alabama cases. *See* Bulso Decl. ¶ 7 (stating that notices of an attorney's lien were filed in the *Park Tower* and *Baswell-Guthrie* (Alabama) cases in October 2011). Apparently, Defendants are claiming that approximately $66,000 was not paid in the *Park Tower* case and approximately $148,000 in the *Baswell-Guthrie* case, *see* Opp'n at 8, for a total of more than $214,000. *See* Bulso Decl. ¶ 7. Because of Defendants' liens, part of the proceeds of a settlement that Plaintiffs reached with another defendant in the Alabama cases (Wilmer & Lee) have not been disbursed to Plaintiffs and instead are being held, pursuant to a court order, by a third-party law firm. *See* Bulso Decl. ¶ 7 & Ex. 5 (Order at 1) (instructing third-party law firm "to hold in their trust account the $214,206 portion of the settlement funds subject to the attorney's lien . . . until a further order from this court").

While all of the above concerns the Alabama cases, Plaintiffs do include in their complaint one allegation that applies to all of the cases in which Defendants were representing them. More specifically, in ¶ 15 of the FAC, Plaintiffs claim that "Defendants overcharged Plaintiffs for services and also acted in their own best interests rather than represent the interest(s) of their clients." FAC ¶

4

15. Plaintiffs do not provide any further specifics as to how Defendants acted in their own self-interest. Other than this allegation, Plaintiffs do not specifically allege that Defendants mishandled the California or Hawaii cases.

## II. **DISCUSSION**

In the currently pending motion, Defendants make three basic arguments: (1) the Court should not exercise jurisdiction over this case based on the prior exclusive jurisdiction doctrine; (2) even if there is no jurisdictional bar, venue is not proper under 28 U.S.C. § 1391 or pursuant to a forum selection clause; and (3) even if venue is proper, a transfer of the case to the Northern District of Alabama is warranted pursuant to 28 U.S.C. § 1404. Each argument is addressed below.

A.  Motion to Dismiss for Lack of Jurisdiction

Defendants first argue for dismissal based on the prior exclusive jurisdiction doctrine. This argument is predicated on the fact that, as noted above, the Alabama district court ordered part of the proceeds of a settlement (between Plaintiffs and Wilmer & Lee) to be held by a third-party law firm based on the attorney's lien asserted by Defendants. *See* Bulso Decl., Ex. 5 (order). Defendants argue that, because the Alabama district court "has already asserted jurisdiction over the settlement proceeds to which the attorney's lien had attached, that court has exclusive jurisdiction" and this Court cannot simultaneously exercise jurisdiction over the same "res." Mot. at 9.

Under the prior exclusive jurisdiction doctrine, "'when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.'" *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011). The rationale underlying this doctrine is based on "[t]he logical and practical difficulty of two courts simultaneously vying for possession or control of the same property." *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 97 (7th Cir. 1987). The Ninth Circuit has emphasized, however, that "'[a]lthough the doctrine is based at least in part on considerations of comity and prudential policies of avoiding piecemeal litigation, it is no mere discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation.'" *Chapman*, 651 F.3d at 1043.

Defendants' argument is not entirely without merit. As they point out, the Fifth Circuit has held that "proceedings to enforce [an attorney's] lien are considered as proceedings in rem and may

5

be enforced only against the proceeds of a judgment secured in the particular case." *Hoxsey v. Hoffpauir*, 180 F.2d 84, 87 (5th Cir. 1950). But even accepting such, that means that this Court could not assert jurisdiction over the Wilmer & Lee settlement proceeds. Defendants have failed to explain why Plaintiffs could not still seek to recover "other" money from Defendants not tied to the settlement proceeds. Hence, Defendants are only partially correct.

B.   Motion to Dismiss for Improper Venue

Defendants argue that, even if there is no jurisdictional bar, venue in the Northern District of California is improper, thus justifying dismissal. According to Defendants, either venue is improper under 28 U.S.C. § 1391, or venue is improper pursuant to a forum selection clause.

1.   28 U.S.C. § 1391

The statute that provides for venue is 28 U.S.C. § 1391. It provides in relevant part as follows:

> A civil action may be brought in –
>
> (1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)   if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In their papers, Defendants suggest that dismissal (or at least transfer) is appropriate because they all reside in Tennessee – *i.e.*, § 1391(b)(1) is controlling over § 1391(b)(2). *See Cobra Partners L.P. v. Liegl*, 990 F. Supp. 332, 333-35 (S.D.N.Y. 1998) ("If, and only if, defendants do not all reside in the same state, then, and only then, venue lies in a district in which a substantial part of the events or omissions giving rise to the claim occurred."). However, "[this] hierarchical interpretation of the venue statute 'represent[s] the minority view.'" *Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 664 F. Supp. 2d 1103, 1120 (D. Haw. 2008). Thus, the main question for the

Court is whether there is venue under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of California. 28 U.S.C. § 1391(b)(2). *See, e.g.*, Opp'n at 15 (focusing on § 1391(b)(2)).

Notably,

> "[s]ection 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." There may be more than one district in which a substantial part of the events giving rise to the claim occurred, and that venue would be proper in each such district. To determine substantiality, the Court looks to "the entire sequence of events underlying the claim[s] and focus[es] on the defendant's (rather than the plaintiff's) actions." If a harm suffered by a plaintiff rises to the level of a tort, then a "substantial part of the events" threshold is satisfied, and thus venue is proper in that district.

*Peterson v. Wash. Mut. Bank*, No. C-10-01462 JCS, 2010 U.S. Dist. LEXIS 144391, at *12-13 (N.D. Cal. July 29, 2010).

Under the above standard, it is not dispositive that much of the challenged representation provided by Defendants to Plaintiffs took place in Alabama. A substantial part of the events can take place in more than one district. Thus, although venue may be proper in Alabama, that does not foreclose venue also being proper in California (more specifically, the Northern District).

Plaintiffs have done an adequate job of establishing that venue in the Northern District of California is proper. *See* Opp'n at 16. For example, Plaintiffs claim that Defendants overbilled in providing services, including in providing services in conjunction with the case where Defendants represented Plaintiffs in the Northern District of California. Also, Plaintiffs note that Defendants consulted with Plaintiffs for *all* of the cases, with Plaintiffs being based in California. Finally, and most importantly, the harms suffered by Plaintiffs are in large part torts (*e.g.*, breach of fiduciary duty and malpractice) and were felt in California, where they reside, which under Ninth Circuit law, is enough to satisfy the "substantial part of the events" test. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (in case where defendant requested a credit report on plaintiffs' corporation and on plaintiffs individually, which plaintiffs claimed constituted a violation of the Fair Credit Reporting Act, noting that "at least one of the 'harms' suffered by Plaintiffs is akin to the tort

1  of invasion of privacy and was felt in Nevada [and so] a substantial part of the events giving rise to
2  the claim occurred in Nevada," thus making venue proper).

### 2. Forum Selection Clause

Defendants argue that, even if venue is proper under § 1391, there should still be a dismissal based on improper venue because Plaintiffs entered into an agreement that contains a forum selection clause – one that specifies the Northern District of Alabama as the appropriate venue.[1]  *See* Bulso Reply Decl., Ex. 3 (Escrow Agreement).  The agreement at issue is an Escrow Agreement pursuant to which some of the settlement funds from Plaintiffs' settlement with Wilmer & Lee get put into an escrow account pending resolution of the attorney's lien dispute between Plaintiffs and Defendants.

Defendants' forum selection argument is problematic.

First, the Supreme Court has indicated that the existence of a forum selection clause is not dispositive.  *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (noting that, under 28 U.S.C. § 1404(a), a district court must take into account "factors *other than those that bear solely on the parties' private ordering of their affairs*," *i.e.*, a forum selection clause) (emphasis added).

Second, as Plaintiffs point out, the Escrow Agreement which contains the forum selection clause is an agreement entered into by Plaintiffs and Wilmer & Lee (and the escrow agent), but not Defendants.  Thus, Defendants – as nonsignatories – arguably should not be able to invoke the forum selection clause at all.  In their reply brief, Defendants argue that they are still entitled to the benefit of the forum selection clause because courts have "recognize[d] the standing of a party to enforce a venue clause under contract to which that party is not a signatory."  Reply at 5 (citing

---

[1] Contrary to what Defendants suggest, only one agreement includes a forum selection clause.  *See* Bulso Decl., Ex. 4 (Escrow Agreement).  The other agreement identified by Defendants has a choice-of-law provision favoring Alabama, but not a forum selection clause.  *See* Bulso Decl., Ex. 3 (Compromise & Settlement Agreement).  Admittedly, the provision is titled "Governing Law *and* Forum for Disputes" (emphasis added), but the actual text of the provision addresses only governing law and says nothing about forum.  *See* Bulso Decl., Ex. 3 (Compromise & Settlement Agreement) (providing that "[t]his Agreement shall be governed by, interpreted in accordance with, and enforced under the laws of Alabama, without regard to its or any other jurisdiction's choice of law principles or, as necessary, the laws of the United States").

1  *Bugna v. Fike*, 80 Cal. App. 4th 229, 235 (2000)); *see also Holland Am. Line, Inc. v. Wartsila N.*
2  *Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (noting that, "where the alleged conduct of the
3  nonparties is closely related to the contractual relationship, 'a range of transaction participants,
4  parties and non-parties, should benefit from and be subject to forum selection clauses'"). But
5  Defendants have little to demonstrate why they should be given standing to enforce the forum
6  selection clause in the Escrow Agreement.

7  Notably, the case on which Defendants rely – *Bugna* – involved a fairly unique situation. In
8  *Bugna*, the plaintiffs entered into a contract with a company, under which the company would
9  provide certain management services for the plaintiffs. The contract between the plaintiffs and the
10 company contained a forum selection clause. The plaintiffs ended up suing not only the company
11 but also their own agents who had negotiated, evaluated, and put together the deal with the
12 company, asserting that their agents had conspired with the company "'to create a fraudulent scheme
13 under the pretense of an arm's length negotiation'" that would ultimately benefit the agents and the
14 company to the detriment of the plaintiffs. *Id.* at 235. The agents invoked the forum selection
15 clause even though they were not signatories to the agreement between the plaintiffs and the
16 company, and, on appeal, the state court held that this was proper. The court noted that a
17 nonsignatory may still invoke a forum selection clause where it is able to "demonstrate that it was so
18 closely related to the contractual relationship that it is entitled to enforce the forum selection
19 clause."[2] *Id.* at 233 (internal quotation marks omitted). The agents had made the necessary showing
20 not only because "they were key transaction participants – the deal makers who negotiated,

---

[2] The court emphasized that

> [t]he key to the closely related test is whether the nonsignatories were close to the contractual relationship, not whether they were close to the third party signator. This makes sense because the forum selection clause is part of the underlying contract, and it is the contractual relationship gone awry that presumably spawns litigation and activates the clause. Giving standing to all closely related entities honors general principles of judicial economy by making all parties closely allied to the contractual relationship accountable in the same forum, thereby abating a proliferation of actions and inconsistent rulings.

*Bugna*, 80 Cal. App. 4th at 235.

9

evaluated and otherwise put together the very [deal] that [the plaintiffs] now attack" but also because "the heart of the complaint" was that the agents and the company had conspired together – *i.e.*, that the agents for the plaintiffs had effectively "crossed over to the other side of the table and in effect became agents for [the company]." *Id.* at 235.  The court also noted that the plaintiffs had sued not only their agents but also the company – implicitly suggesting that, as a matter of judicial economy, it would make sense to have everything litigated in the same forum. *See id.*

The facts in the instant case are materially different from those in *Bugna*. Here, for example, there is no charge by Plaintiffs that Defendants conspired with anyone against them. Plaintiffs have not sued Wilmer & Lee with respect to the Escrow Agreement. Defendants here are not so central to the Escrow Agreement and to any claim against Wilmer & Lee thereunder such that they may be deemed "closely related" to that Agreement so as to confer on them standing to invoke the forum selection clause therein.

To the extent Defendants suggest that they should still be able to invoke the forum selection clause because the Escrow Agreement was for their benefit, *see id.* at 233 (in looking at whether the "closely related" test has been met, taking into consideration "whether the contracting parties intended [the third party invoking the forum selection clause] to benefit from the [contracting parties'] agreement); *cf. Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 & n.7 (7th Cir. 1993) (stating that "[w]hile it may be true that third-party beneficiaries to a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required"), that argument is not particularly convincing. As Plaintiffs point out, the Escrow Agreement contains the following provision:

> 3.   **No Third Party Beneficiaries**.
>
> This Escrow Agreement has been executed to assure the Wilmer & Lee Parties, their insurers, and attorneys by escrowing the entire amount of the Attorney's Lien Claims that they will not become involved in potentially expensive litigation over the Attorney's Lien Claims. The Deposit is not an admission of liability, but rather is to secure the payment of the Attorney's Lien Claims if determined to be valid.

Bulso Reply Decl., Ex. 3 (Escrow Agreement). Defendants contend that, even though the above provision is titled "No Third Party Beneficiaries," the text of the provision actually demonstrates

10

that they are intended beneficiaries: "[T]he purpose of the Agreement is 'to secure the payment of the attorney's lien claims,' which unquestionably provided a benefit to Leader, Bulso & Nolan, PLC." Reply at 6. However, it is clear from the first sentence of the provision that the purpose of the agreement was to protect Wilmer & Lee, not Defendants.

Even if Defendants could be considered intended beneficiaries of the Escrow Agreement – such that they can invoke the forum selection clause – there is still another problem that they face. More specifically, the forum selection clause specifies that "[a]ny action to brought *to enforce this Agreement* shall be brought in the United States District Court for the Northern District of Alabama." Bulso Decl., Ex. 4 (Escrow Agreement). Here, Plaintiffs are not trying to enforce the Escrow Agreement in any way – *e.g.*, they are not contending that funds have not been put into the escrow or trust account or that funds have been improperly transferred out of the account. Therefore, the forum selection clause has no application to the case at bar.

C. <u>Motion to Transfer</u>

Finally, Defendants argue that, if the Court does not dismiss the action based on a lack of jurisdiction or improper venue, at the very least, it should transfer the case to the Northern District of Alabama pursuant to 28 U.S.C. § 1404. Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Consistent with the language of § 1404(a), the Ninth Circuit has held that a district court has discretion in deciding whether to transfer. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (stating that a "district court's decision to change venue is reviewed for abuse of discretion"; adding that "'[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge'"). In making the decision on whether to transfer, a court may consider factors such as:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

1 *Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.). The
2 party moving for transfer has the burden in showing that transfer is appropriate. *See Commodity*
3 *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Winningham v. Biomet*
4 *Orthopedics, LLC*, No. C 12-00503 JSW, 2012 U.S. Dist. LEXIS 129542, at *3-4 (N.D. Cal. Aug.
5 31, 2012).

6 In the instant case, some of the factors identified above are essentially neutral. For example,
7 California is a more convenient forum for Plaintiffs, but Alabama is a more convenient forum for
8 Defendants. Documentary evidence is likely located both in California where Plaintiffs are located
9 as well as Tennessee where Defendants' offices are located.[3]

10 However, with respect to witnesses, the balance slightly favors Alabama. While there may
11 be some witnesses in California (including Plaintiffs and one of their attorneys), there appear to be a
12 significant number of witnesses in Alabama or a nearby state (*e.g.*, Defendants and their employees,
13 an expert witness that Defendants hired in one of the Alabama cases, the defense attorneys in the
14 Alabama cases, and one of Plaintiffs' attorneys).

15 More significantly, there are two other critical factors that weigh strongly in Defendants'
16 favor. First, there is the factor of feasibility of consolidation with other claims. Here, Plaintiffs have
17 invoked the jurisdiction of this Court to resolve the issue of whether Defendants committed
18 malpractice in conjunction with the Alabama lawsuits. But the Alabama court, and not this Court, is
19 best situated to make this evaluation given that the alleged wrongdoing took place before the
20 Alabama court (*e.g.*, alleged improper designation of an expert witness). While Plaintiffs contend
21 that the acts of malpractice were indisputable and on the record, thus requiring little proof or
22 complicated proceedings, the Alabama malpractice claims will require an assessment of the standard
23 of care owed by counsel and whether Plaintiffs suffered prejudice; the latter issue may well entail
24 the typical scenario of having to try the "case within the case" to determine whether, but for the
25 alleged malpractice, Plaintiffs would have prevailed. Thus, given the overlap, there is a strong

---

[3] Moreover, where documentary evidence is located is usually not dispositive. *See, e.g.*, *Friends of Scot., Inc. v. Carroll*, No. C 12-01255 WHA, 2013 U.S. Dist. LEXIS 40576, at *7 (N.D. Cal. Mar. 22, 2013) (noting that, "'[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden'").

likelihood that this case would be consolidated with or at least related to the Alabama lawsuits if transferred.

The Court recognizes that the instant action involves more than the Alabama lawsuits – *i.e.*, the instant action also calls into question conduct by Defendants in California and Hawaii. However, none of the allegations involve malpractice in the handling of proceedings before any court in California or Hawaii; the alleged wrongdoing by Defendants in California and Hawaii – overcharging fees – is equally amenable to adjudication in any court irrespective of venue.

Second, the factor of familiarity with the governing law also weighs strongly in Defendants' favor. Here, because the parties never agreed to a specific governing law in a contract, there is a strong possibility that the governing law will be tied to the situs of the cases where Defendants represented Plaintiffs – *i.e.*, for the alleged wrongdoing in the Alabama lawsuits, Alabama law will govern; for the alleged wrongdoing in the California lawsuit, California law will govern; and for the alleged wrongdoing in Hawaii, Hawaii law will govern. While this Court is familiar with California law, the Alabama court would have little difficulty in assessing and applying that law given the straightforward nature of the claim brought against Defendants with respect to their California lawsuits – *i.e.*, overbilling. In contrast, the claim against Defendants with respect to the Alabama lawsuits – for which Alabama law will likely govern – will require a more complicated analysis as it involves a charge that Defendants did not act under the appropriate standard of care and may require examination into the merits of the underlying cases. Thus, ultimately, this factor also counsels in favor of a transfer to Alabama.

Taking into account all of the above-identified factors, the Court concludes, in its discretion, that a transfer to the Northern District of Alabama is appropriate.

///
///
///
///
///
///

13

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss the case for lack of jurisdiction, denies Defendants' motion to dismiss for improper venue, and grants Defendants' alternative motion to transfer venue to the Northern District of Alabama.

The Clerk of the Court is instructed to transfer the case to the Northern District of Alabama in accordance with this opinion.

This order disposes of Docket No. 3.

IT IS SO ORDERED.

Dated: May 14, 2013

_____
EDWARD M. CHEN
United States District Judge